UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

ANDIA EVANS,

   Plaintiff,

  v.

ADAMS, MORRIS & SESSING,

and

AEDIS TITLE, LLC,

   Defendants.

———————————————————————

 )
 )
 )
 )
 )
 )
 )
 )
 )
 )
 )
 )
 )
 )
 )
 )

Civil Action No. 24-2469 (PLF)

## OPINION

   In 2021, plaintiff Andia Evans sold her townhouse to non-party JoAnn Hood. As part of this transaction, a portion of Ms. Evans's sale proceeds were to be used to pay off an outstanding loan that Ms. Hood had made to Ms. Evans years before. As the closing date approached, Ms. Evans became aware that Ms. Hood sought to collect certain legal fees from Ms. Evans's proceeds from the sale of the townhouse. Ms. Evans insisted that Ms. Hood was not entitled to collect these legal fees. At the closing, defendant Aedis Title, LLC ("Aedis") – the escrow agent for the transaction – deducted $56,815.00 from Ms. Evans's proceeds that were used to pay the contested legal fees.

   Ms. Evans brought this action against Aedis and defendant Adams, Morris & Sessing's ("AMS") – Ms. Hood's law firm – seeking to recover the contested legal fees and other related compensatory and punitive damages. Before the Court are defendants' motions to

dismiss.  Upon careful consideration of the parties' written submissions and the relevant

authorities, the Court grants the defendants' motions.[1]

## I.  BACKGROUND

### A.  The Sale and Re-Sale of the Townhouse

On August 9, 2014, plaintiff Andia Evans purchased a condominium townhouse

located at 3102 Cherry Road N.E. #35, Washington, D.C. (the "Townhouse"), from the JoAnn

Hood Living Trust (the "Hood Trust").  See Second Am. Compl. ¶ 5.  Ms. Evans and JoAnn

Hood executed a "Deed of Trust," which involved a $220,000 loan Ms. Hood made to Ms. Evans

for the purpose of purchasing the Townhouse.  Id. ¶ 6.  In July 2017, Ms. Evans sought to

refinance the loan made to her by Ms. Hood and "submitted a formal loan refinance application

to a local bank."  Id. ¶ 7.  During the application process, Ms. Evans "discovered that [Ms.] Hood

was not properly licensed as a loan originator and that her signature had been forged on a

Settlement Extension Addendum."  Id.

On November 6, 2019, Ms. Evans filed a lawsuit in this Court against Ms. Hood,

the Hood Trust, and others.  See Second Am. Compl. ¶ 8; see Evans v. Hood, Civil Action

---

[1]    The Court has reviewed the following papers in connection with this matter:
Second Amended Complaint ("Second Am. Compl.") [Dkt. No. 21]; Memorandum of Points and
Authorities in Support of Defendant Adams, Morris & Sessing's Motion to Dismiss Counts I, II,
and III of Plaintiff's Second Amended Complaint ("AMS Mem.") [Dkt. No. 22-1];
Memorandum of Points and Authorities in Support of Defendant Aedis Title LLC's Motion to
Dismiss the Second Amended Complaint ("Aedis Mem.") [Dkt. No. 23-1]; Plaintiff's Opposition
to Defendant Adams, Morris, and Sessings' Motion to Dismiss Plaintiff's Second Amended
Complaint ("AMS Opp.") [Dkt. No. 28]; Reply to Plaintiff's Opposition to Defendant Adams,
Morris & Sessing's Motion to Dismiss ("AMS Reply") [Dkt. No. 29]; Plaintiff's Opposition to
Defendant Aedis, LLC's Motion to Dismiss ("Aedis Opp.") [Dkt. No. 30-1]; and Defendant
Aedis Title LLC's Reply Memorandum in Support of Motion to Dismiss the Second Amended
Complaint ("Aedis Reply") [Dkt. No. 33].

No. 19-3346 (CJN) (D.D.C.).  The case was randomly assigned to Judge Carl Nichols who dismissed it on July 2, 2020, for lack of jurisdiction.  See Second Am. Compl. ¶ 8; see also Evans v. Hood, Civil Action No. 19-3346 (CJN), 2020 WL 3605651 (D.D.C. July 2, 2020).[2]  Ms. Evans "re-file[d] the civil action in D.C. Superior Court on August 13, 2020."  See Second Am. Compl. ¶ 8.  The case was dismissed on statute of limitations grounds.  See id. ¶ 10; see also Evans v. Hood, Case No. 2022-CA-000017-B (D.C. Super. Ct.) (consolidated with Case No. 2020-CA-003574-B).

Several years later, Ms. Evans decided to sell the Townhouse to Ms. Hood.  See Second Am. Compl. ¶ 12.  The sale was set to close on November 19, 2021.  Id.  As part of the sale, Ms. Evans sought a "payoff amount" providing the balance Ms. Evans still owed Ms. Hood pursuant to the deed of trust that was entered in connection with the purchase of the Townhouse. Id. ¶¶ 14-15.  On September 20, 2021, Ms. Evans received a payoff statement from Ms. Hood showing that she still owed $335,135.65, which included, among other items, $268,374.84 in loan balance and $63,557.61 in legal fees.  See Exhibit 5 to the Second Am. Compl [Dkt. No. 21-1 at ECF 37]; Second Am. Compl. ¶ 14.

Ms. Evans believed that Ms. Hood was not entitled to collect the legal fees under the deed of trust.  On September 28, 2021, her lawyer wrote to AMS – Ms. Hood's attorney – questioning why these fees had been included in the payoff statement.  See Second Am. Compl. ¶ 15.  Shortly after, Ms. Hood appears to have given Ms. Evans further information on the composition of the amount of the legal fees, which consisted of $47,527.63 for legal fees

---

[2]    Judge Nichols concluded in Evans v. Hood that Ms. Evans failed to state a federal law claim against the defendants.  See Evans v. Hood, Civil Action No. 19-3346 (CJN), 2020 WL 3605651 (D.D.C. July 2, 2020).  In light of this conclusion, Judge Nichols declined to exercise supplemental jurisdiction over Ms. Evans's remaining D.C.-law claims.  Id. at *5.

rendered in connection with several ongoing lawsuits between Ms. Evans and Ms. Hood, and $16,029.97 "for payment of [Ms. Hood's] husband's legal representation." See id. ¶ 17. Ms. Evans, through counsel, requested documentation related to the $47,527.63 amount. See id. ¶ 18; Exhibit 6 to Second Am. Compl. [Dkt. No. 21-1]. On October 29, 2021, a representative of Aedis – Ms. Hood's escrow and settlement agent for the transaction – responded to Ms. Evans's request for documentation, explaining:

> We are currently scheduled to close on 11/5/21 (one week from today). At this time, the sale is unlikely to proceed because of a cloud on title in the form of a potential lein.(sic) The payoff statement provided us includes attorney fees of $63,557.61. If those fees are not removed from the payoff statement, they must be either paid through the transaction or will present a potential cloud on title, resulting in our inability to insure the property. Please advise if it is possible to obtain a payoff statement without the legal fees included so we can proceed with the transaction. . . .

Second Am. Compl. ¶ 19.

On November 2, 2021, Aedis "transmitted a Payoff Statement for Evans dated October 31, 2021," which listed approximately the same amounts for loan balance and legal fees that were included in the September 20, 2021 payoff statement – that is, $268,374.89 for loan balance and $63,557.01 for legal fees. See Second Am. Compl. ¶ 20. Ms. Evans reached out to AMS and Aedis to determine the basis by which she was said to be liable to pay Ms. Hood's legal fees and to receive additional documentation on the fees. See Second Amend. Compl. ¶¶ 15-22. She eventually received three "highly redacted" invoices from AMS. See id. ¶¶ 22, 24-27, 43. While the invoices appeared to be associated with either "a non-existing 'Foreclosure' [m]atter" or the cases Ms. Evans had brought in this Court and in the Superior Court of the District of Columbia, see id. ¶¶ 22, 26-27, the invoices "did not delineate the proportionate fees paid by the seller[, the Hood Trust,] and the lender[, Ms. Hood,] for respective

services rendered . . ."  Id. ¶ 25; see id. ¶¶ 28, 31 (a communication from Ms. Hood to Aedis

stated that $7,149.50 of the legal fees included in the payoff statement were "for the actions

taken against [Ms. Hood] in the D.C. Court of Appeals").

On November 4, 2021, Ms. Hood wrote to Aedis providing a revised payoff

statement that listed the total payoff amount as $328.393.04, which included $268,374.84 in loan

balance and $56,815.00 in legal fees.  See Exhibit 9 to Second Am. Compl. ("Nov. 4, 2021

Payoff Statement") [Dkt. No. 21-1 at ECF 52-53]; see also Second Am. Compl. ¶ 31.[3]  On

November 10, 2021, Ms. Evans, through counsel, contacted AMS and argued that the Deed of

Trust "did not govern [AMS]'s demand for $56,815.00 in attorney's fees since the pending civil

litigation did not involve a claim involving the Deed of Trust . . . ."  See Second Am. Compl.

¶ 37.  AMS responded to counsel's contention several days later, stating:

> It is our client's position that Paragraph 14 of the Standard
> Fannie/Freddie Deed of Trust at issue here provides for and entitles
> my client to legal fees, amongst others.  Please also note that it is
> our client's position that any future legal fees incurred, which fees
> accrue from the instant litigation, would also be the responsibility of
> your plaintiff under the Deed of Trust.

Second Am. Compl. ¶ 38 (emphasis omitted).

On November 18, 2021, the day before the transaction was to close, Aedis issued

a "Combined Settlement Statement" to Ms. Evans providing that she still owed $329,375.57 as

---

[3]     While Ms. Evans does not specifically acknowledge that she received the
November 4, 2021 payoff statement, other assertions by her reflect that she was aware of the
amounts in this statement.  Specifically, she alleges that on November 10, 2021, her attorney
communicated to AMS that the deed of trust "did not govern [AMS]'s demand for $56,815.00 in
attorney's fees, see Second Am. Compl. ¶ 37, showing that Ms. Evans was aware that the amount
of legal fees had been revised from $63,557.01 – the amount listed in the November 2, 2021
payoff statement, see id. ¶ 20 – to $56,815.00 – the amount in the November 4, 2021 payoff
statement.  A cover letter to November 4, 2021 Payoff Statement reflects that part of the
reduction in the total amount of legal fees was Ms. Hood's request to remove the "legal fees paid
to RLG Law for David Hood's defense."  See Nov. 4, 2021 Payoff Statement.

"Payoff to JoAnn Hood, Trustee," consisting of $328,393.04 in "principal," $36.39 in "interest," and $946.14 in "additional interest."  <u>See</u> Second Am. Compl. ¶ 39; <u>see</u> Exhibit 11 to Second Amend. Compl. ("Combined Settlement Statement") [Dkt. No. 21-1].  Although the Combined Settlement Statement did not make any reference to "the disputed legal fees," <u>see</u> Second Am. Compl. ¶ 39, the total payoff amount was equal to the amount provided in the November 4, 2021 payoff statement, which had included the $56,815.00 in legal fees.  <u>See</u> Nov. 4, 2021 Payoff Statement.

    Ms. Evans attended the closing of the sale the next day.  <u>See</u> Second Am. Compl. ¶ 42; Def. Aedis Mem. at 1.  At the closing, Ms. Evans signed two documents.  First, she signed the Combined Settlement Statement, acknowledging that the statement was "a true and accurate statement of all receipts and disbursements made on my account or by me in th[e] transaction" and that she "authorize[d] Aedis Title, LLC to cause the funds to be disbursed in accordance with th[e] statement."  <u>See</u> Combined Settlement Statement at 3.  Second, Ms. Evans signed an "Authority to Disburse Sale," which states in relevant part that:

> This is to authorize and empower the law firm of Aedis Title, LLC, of Fairfax, VA, to receive, handle and disburse all proceeds the undersigned are due and owe including, but not limited to, the paying of the brokerage commissions in connection with said sale, any amounts due in connection with any mortgages or liens on said property and Seller's attorneys' fees in connection with said sale, provided such receiving, handling and disbursing conform to the settlement sheet provided to the Seller in such sale.

Exhibit 13 to Second Am. Compl. ("Authority to Disburse Sale") [Dkt. No. 21-1]; <u>see</u> Second Am. Compl. ¶ 42.  Aedis subsequently "paid $329,375.57 to the JoAnn Hood Living Trust, which included the claimed $56,815.00 in legal fees . . . ."  <u>See</u> Second Am. Compl. ¶ 43.

### B.  Procedural Background

Ms. Evans originally filed this suit in the Superior Court of the District of

Columbia solely against AMS.[4]  After AMS removed the case to this Court, see Notice of

Removal [Dkt. No. 1], Ms. Evans filed an amended complaint adding Aedis as a defendant.  See

Amended Complaint [Dkt. No. 6].  Given a lack of detail in Ms. Evans's amended complaint

related to the Court's subject matter jurisdiction – particularly, as to whether the requirements of

diversity jurisdiction exist – the Court ordered Ms. Evans to show cause as to why the case

should not be dismissed.  See Evans v. Adams, Morris & Sessing, Civil Action No. 24-2469

(PLF), 2024 WL 4227311 (D.D.C. Sept. 18, 2024).  Based on Ms. Evans's response to the order

to show cause, the Court permitted Ms. Evans to file an amended complaint that "amends only

the information . . . related to the Court's jurisdiction."  Order [Dkt. No. 20].  Ms. Evans filed the

second amended complaint on October 11, 2024, see Second Am. Compl., and the defendants

subsequently filed their motions to dismiss.[5]

---

[4]     Between November 6, 2019, and November 4, 2024, Ms. Evans sued Hood three times – twice in the Superior Court of the District of Columbia and once in the United States District Court for the District of Columbia – for "substantially similar causes" to those brought in this case.  See AMS Reply at 2; see also Second Am. Compl. ¶¶ 8-11; Evans v. Hood, Civil Action No. 19-cv-3346 (CJN) (D.D.C.); Evans v. JoAnn Hood Living Trust, et al., Case No. 2020-CA-003574-B (D.C. Super. Ct.); Evans v. Hood, et al., Case No. 21-CV-0447 (D.C. Ct. App.); Evans v. Hood, Case No. 2022-CA-000017-B (D.C. Super. Ct.) (consolidated with Case No. 2020-CA-003574-B).  Ms. Evans was unsuccessful in each of these lawsuits.  See AMS Reply at 2.

[5]     Prior to the filing of the second amended complaint, AMS had filed a motion to dismiss the first amended complaint.  See Defendant, Adams, Morris & Sessing's, Motion to Dismiss Counts I, II, and III of Plaintiff's Amended Complaint [Dkt. No. 12].  In light of the Court's order directing Ms. Evans to file a second amended complaint, the Court permitted AMS to "supplement" its already-filed motion to dismiss.  See Order [Dkt. No. 20].  Instead of supplementing its motion, AMS filed a new motion to dismiss.  See Defendant, Adams, Morris & Sessing's, Motion to Dismiss Counts I, II, and III of Plaintiff's Second Amended Complaint [Dkt. No. 22].  Given that a new motion was filed, the Court denies Defendant, Adams, Morris &

## II.  STANDARD OF REVIEW

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff is required to plead facts that "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570); see Spence v. U.S. Dep't of Veterans Affs., 109 F.4th 531, 539 (D.C. Cir. 2024).  Furthermore, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

In deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022); see Ashcroft v. Iqbal, 556 U.S. at 678.  The Court considers the complaint in its entirety, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and construes it liberally, granting plaintiffs "the benefit of all inferences that can [reasonably] be derived from the facts alleged."  Sickle v. Torres Advanced Enter. Sols., LLC., 884 F.3d 338, 345 (D.C. Cir. 2018). The Court, however, need not accept all inferences drawn by the plaintiff "if such inferences are unsupported by the facts set out in the complaint."  Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C.

---

Sessing's, Motion to Dismiss Counts I, II, and III of Plaintiff's Amended Complaint [Dkt. No. 12] as moot.

Cir. 2016) (quoting <u>Kowal v. MCI Commc'ns Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  Nor

is the Court "bound to accept as true a legal conclusion couched as a factual allegation."

<u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (citation omitted); <u>see also</u> <u>Kaempa v. Myers</u>, 367 F.3d 958,

963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as

they contradict exhibits to the complaint or matters subject to judicial notice.").

## III.  DISCUSSION

Ms. Evans brings six counts:  (1) tortious interference with contract/tortious

interference with prospective business advantage, <u>see</u> Second Am. Compl. ¶¶ 54-62; (2) fraud,

<u>see</u> <u>id</u>. ¶¶ 63-70, (3) negligent misrepresentation, <u>see</u> <u>id</u>. ¶¶ 71-74; (4) breach of fiduciary duty,

<u>see</u> <u>id</u>. ¶¶ 75-80; (5) breach of contract, <u>see</u> <u>id</u>. ¶¶ 81-84; and (6) breach of implied covenant of

good faith and fair dealings.  <u>See</u> <u>id</u>. ¶¶ 85-88.  The first three counts are brought against AMS,

while the latter three are brought against Aedis.

The Court addresses each of the claims separately, beginning with those brought

against AMS.

### A.  Claims Against AMS (Counts I, II, and III)

1.  Count I:  Tortious Interference with Contract & Tortious Interference with Prospective
Business Advantage

To state a claim of tortious interference with a business relationship, a plaintiff

must allege:  "(1) [the] existence of a valid contractual or other business relationship; (2) the

defendant's knowledge of the relationship; (3) intentional interference with that relationship by

the defendant; and (4) resulting damages."  <u>Onyeoziri v. Spivok</u>, 44 A.3d 279, 286 (D.C. 2012)

(citation and internal quotations omitted); <u>see</u> <u>First Annex, Inc. v. Nat'l R.R. Passenger Corp.</u>,

990 F. Supp. 2d 1, 4 (D.D.C. 2013).[6]  As to the third element – intentional interference – a plaintiff must allege that "the defendant was certain or substantially certain that interference with a business relationship would occur as a result of the defendant's actions."  Close It! Title Servs., Inc. v. Nadel, 248 A.3d 132, 141 n.28 (D.C. 2021) (emphasis omitted); see McNeil v. Duncan, Civil Action No. 19-0694 (RDM), 2022 WL 2785970, at *8 (D.D.C. July 15, 2022); Haymon v. District of Columbia, 610 F. Supp. 3d 101, 120 (D.D.C. 2022).  "To be actionable, the interference need not cause an actual breach of the business relationship, but instead may cause merely a failure of performance by one of the parties."  Onyeoziri v. Spivok, 44 A.3d at 286 (citation and internal quotation marks omitted); see First Annex, Inc. v. Nat'l R.R. Passenger Corp., 990 F. Supp. 2d at 4.

        In the instant case, while the complaint and Ms. Evans's opposition provide very little information on the precise nature of her claim – such as by describing the exact business relationship or contract AMS allegedly interfered with – the thrust of her claim appears to be that AMS tortiously interfered with the sale of the Townhouse by insisting that Ms. Evans was required to pay $56,815.00 in legal fees.  See Second Am. Compl. ¶¶ 54-62.  As an initial matter, factual allegations in the complaint suggest that it was Ms. Hood – not AMS – who insisted that Ms. Evans was liable for the legal fees under the deed of trust.  For example, Ms. Evans provides an excerpt from a communication with AMS, where an attorney for AMS stated that "[i]t is our client's position" that the deed of trust "entitles my client to legal fees."  See id. ¶ 38 (emphasis omitted).  In addition, an exhibit Ms. Evans references in and attaches to the complaint shows

---

        [6]        "The tort of intentional interference with a prospective business advantage runs parallel to that for interference with existing contracts . . . ."  Modis, Inc. v. InfoTran Sys., Inc., 893 F. Supp. 2d 237, 241 (D.D.C. 2012) (quoting Brown v. Carr, 503 A.2d 1241, 1247 (D.C. 1986)).

that it was Ms. Hood – not AMS – who provided Aedis with the payoff statement that included the contested legal fees.  <u>See</u> Nov. 4, 2021 Payoff Statement; <u>see also</u> Second Am. Compl. ¶ 31.

   Even if this Court were to conclude that Ms. Evans had sufficiently alleged that AMS was the party responsible for attempting to include the legal fees in the total payoff amount, Ms. Evans has not sufficiently alleged in her complaint that this conduct amounts to "intentional interference with [a business] relationship by the defendant."  <u>See</u> <u>Onyeoziri v. Spivok</u>, 44 A.3d at 286.  Ms. Evans does not provide any factual matter suggesting that AMS attempted to include the legal fees in the payoff amount to "induc[e] or otherwise caus[e]" Ms. Hood or Aedis "not to perform . . . ."  <u>See</u> <u>Newmyer v. Sidwell Friends Sch.</u>, 128 A.3d 1023, 1039 (D.C. 2015) (cleaned up) (quoting <u>Onyeoziri v. Spivok</u>, 44 A.3d at 286).  Instead, she merely asserts in a conclusory manner that that AMS "interfered" with the sale of the Townhouse and that such "interference" harmed her by "imped[ing]" the "sales price and net profits" she expected to receive.  <u>See</u> AMS Opp. at 3-4.  These assertions of "interference" without supporting facts are insufficient to withstand a motion to dismiss.  <u>See</u> <u>First Annex, Inc. v. Nat'l R.R. Passenger Corp.</u>, 990 F. Supp. 2d at 4 ("This allegation, however, is nothing more than a legal conclusion which, as plaintiff acknowledges, the Court need not accept.") (citation and internal quotation marks omitted); <u>Hodges v. Gov't of District of Columbia</u>, 975 F. Supp. 2d 33, 42 (D.D.C. Sept. 30, 2013) ("[T]he Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.").[7]

---

   [7] Ms. Evans suggests throughout the complaint that AMS improperly billed for certain legal services.  <u>See</u>, <u>e.g.</u>, Second Am. Compl. ¶¶ 22-28.  Even if Ms. Evans is correct and AMS improperly charged Ms. Hood or the Hood Trust for legal services, it remains unclear how this conduct represented an intentional interference with Ms. Evans's business relationship.

In sum, Ms. Evans's first count must be dismissed for failure to state a claim.  See First Annex, Inc. v. Nat'l R.R. Passenger Corp., 990 F. Supp. 2d at 4 (dismissing tortious interference claim where plaintiff failed to allege intentional conduct on the part of defendant and failed to allege that defendant "inten[ded] to interfer[e]" with plaintiff's business relationship).

### 2.    Count II:  Fraud

Count II is captioned "Fraud," but – based on the facts alleged – it appears to be a fraudulent misrepresentation claim.[8]  Under District of Columbia law, to establish a claim for fraudulent misrepresentation, a plaintiff must allege "(1) that a false representation was made, (2) in reference to a material fact, (3) with knowledge of its falsity, (4) with intent to deceive, and (5) action taken in detrimental reliance upon the representation."  Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of United States, 258 F. Supp. 3d 1, 13 (D.D.C. 2017) (quoting Sibley v. St. Albans Sch., 134 A.3d 789, 808-09 (D.C. 2016).  Rule 9(b) of the Federal Rules of Civil Procedure requires that a complaint alleging fraud "must 'state with particularity the circumstances constituting the fraud or mistake,' meaning the plaintiff must 'state the time, place, and content of the false misrepresentations, the fact misrepresented and what was retained

---

[8]    While Ms. Evans does not expressly state the type of fraud claim she seeks to establish, the Court interprets her claim as one for fraudulent misrepresentation because the claim appears to center on misrepresentations made by AMS – specifically, AMS's representations that the legal fees were recoverable under the deed of trust.  See AMS Opp. at 5; see also In re U.S. Off. Prods. Co. Sec. Litig., 251 F. Supp. 2d 77, 100 (D.D.C. 2003) ("[A] fraud claim requires a showing that (1) the defendant made a false representation, (2) the representation was in reference to a material fact, (3) the defendant had knowledge of its falsity, (4) the defendant intended to deceive, (5) the plaintiffs acted in reliance on the misrepresentation, and (6) the reliance was reasonable.").  To the extent Ms. Evans intends to state a fraudulent inducement claim, "[t]he requirements for such a claim are essentially the same as those for a fraudulent misrepresentation claim," Jacobson v. Hofgard, 168 F. Supp. 3d 187, 195 n.1 (D.D.C. 2016), and must be dismissed for the same reasons.

or given up as a consequence of the fraud." FED. R. CIV. P. 9(b); Clevinger v. Advoc. Holdings, Inc., Civil Action No. 23-1159 (JMC), 2024 WL 3359508, at *16 (D.D.C. July 10, 2024) (quoting Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of the United States, 258 F. Supp. at 12); see Schwab v. MissionSide, LLC, Civil Action No. 20-2376, 2021 WL 5138445, at *7 (D.D.C. Nov. 4, 2021). The plaintiff must also "identify individuals allegedly involved in the fraud." Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of United States, 258 F. Supp. 3d at 12 (citation and internal quotation omitted).

      In the instant case, it is not clear from the complaint the exact statements Ms. Evans alleges are fraudulent. The complaint itself suggests that the basis of her claim is not about statements AMS made to her, but rather statements AMS made to Aedis and Ms. Hood. See Compl. ¶ 64 ("AMS knowingly and intentionally made false representations to Defendant Aedis regarding legal fees which it represented Plaintiff owed to Hood the lender."); AMS Opp. at 7 ("AMS virtually admits that it committed fraud on Aedis via its misrepresentation of legal fees due . . . ."). Ms. Evans's opposition to the motion to dismiss more clearly identifies the purportedly fraudulent statements at issue – the statements AMS made to her counsel that "the Deed of Trust obligated Plaintiff to pay the attorney fees which AMS had billed to Hood." See AMS Opp. at 5; see also Compl. ¶¶ 37-38.

      These statements do not support Ms. Evans's claim of fraud or fraudulent misrepresentation. As an initial matter, the factual allegations in the complaint do not clearly demonstrate that AMS's statement that the legal fees were recoverable pursuant to the deed of trust was false, let alone that AMS had "knowledge of [the statement's] falsity." See Boomer Dev., LLC v. Natl Ass'n of Home Builders of United States, 258 F. Supp. 3d at 13. Prior to closing, Ms. Evans's counsel and AMS discussed the ability to recover these legal fees and AMS

was forthcoming with its "client's position" that Ms. Hood was entitled to these fees. See
Second Am. Compl. ¶¶ 37-38. There is nothing in the complaint – other than Ms. Evans's
assertions – that the fees were in fact not recoverable under the deed of trust, which is
insufficient to withstand a motion to dismiss. See Hodges v. Gov't of District of Columbia, 975
F. Supp. 2d at 42 ("[T]he Court need not accept inferences drawn by the plaintiff if those
inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's
legal conclusions."). Furthermore, even if AMS's interpretation of the deed of trust was
incorrect, there are no facts in the complaint to suggest that AMS knew this was the case nor that
AMS forwarded its position with an "intent to deceive" Ms. Evans. See Boomer Dev., LLC v.
Nat'l Ass'n of Home Builders of United States, 258 F. Supp. 3d at 13.

    The most glaring problem for Ms. Evans' claim of fraud is that even if she were
able to satisfy all of the other elements of the claim, she has not sufficiently alleged that she
"relied" on these statements. See Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of United
States, 258 F. Supp. 3d at 13 (a plaintiff must allege "action taken in detrimental reliance upon
the representation"). Ms. Evans specifically alleges that she vigorously contested the addition of
these fees to the payoff statement prior to the closing on the Townhouse and nonetheless moved
forward with the transaction. See Second Am. Compl. ¶ 37 (alleging that on November 10,
2021, Ms. Evans's counsel reached out to AMS to contest the addition of the $56,815.00 in
attorney fees to the payoff statement). Ms. Evans's effectively concedes that she proceeded to
the closing notwithstanding her belief that the legal fees were improperly added to the payoff
statement, stating "Plaintiff and her attorney [k]new they could address the actions of AMS and
Aedis at a later date – which has arrived." See AMS Opp. at 9. In other words, Ms. Evans did

not take any action "in detrimental reliance upon the representation," but rather assumed that she

would be able to recover the $56,815.00 at a later date.[9]

      In sum, because Ms. Evans has not sufficiently alleged that she relied on AMS's

purportedly fraudulent statements, her fraud claim must be dismissed.[10]

### 3.   Count III:  Negligent Misrepresentation

      "[T]he elements of a negligent misrepresentation claim are the same as those of a

fraudulent misrepresentation claim, except a negligent misrepresentation claim does not include

the state of mind requirements of fraud."  Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of

United States, 325 F.R.D. 6, 12 (D.D.C. 2018) (citation and internal quotation marks omitted).

In other words, a plaintiff alleging negligent misrepresentation must demonstrate "(1) that the

defendant made a false statement or omitted a fact that he had a duty to disclose; (2) that it

involved a material issue; and (3) that the plaintiff reasonably relied upon the false statement or

omission to [their] detriment."  Heyer v. Schwartz & Assocs. PLLC, 319 F. Supp. 3d 299,

---

[9]    Ms. Evans briefly suggests that she did not know of the existence of the legal fees in the payoff statement and only "proceed[ed] with the closing . . . after Aedis deceptively appeared to remove the attorney fees."  See AMS Opp. at 8-9.  This argument, however, would serve as the basis for a claim of fraud against Aedis, not AMS.  Moreover, as discussed more below, the factual allegations in the complaint do not support this argument.

[10]    Ms. Evans appears to argue that AMS's communications with Aedis – if fraudulent – could be a basis for her claim.  See AMS Opp. at 7; see also Second Am. Compl. ¶ 69 ("The Co-Defendant Title Company relied on Defendant's representation to Plaintiffs' detriment.").  While it is true that under D.C. law, "the maker of material misrepresentations may be held liable for losses incurred by third parties who reasonably rely on those representations, so long as the third party falls within an identifiable class of persons that the defendant intended to influence," see Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of United States, 325 F.R.D. 6, 14 (D.D.C. 2018), such a claim would fail for the same reasons already explained – that is, Ms. Evans has not sufficiently alleged that AMS's statements were false, that it made the statements with an intent to deceive or influence her, or that she reasonably relied on those statements.

306-07 (D.D.C. 2018) (quoting <u>Sundberg v. TTR Realty, LLC</u>, 109 A.3d 1123, 1131
(D.C. 2015)).  Like fraud, each element must be alleged with particularity.  <u>See</u> <u>Clevinger v.
Advoc. Holdings, Inc.</u>, Civil Action No. 23-1159 (JMC), 2024 WL 3359508, at *16 (D.D.C. July
10, 2024); <u>Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of the United States</u>, 258 F.
Supp. 3d at 12.

       Ms. Evans's negligent misrepresentation claim must be dismissed for the same
reasons that her fraud claim must be dismissed – that is, Ms. Evans does not sufficiently allege
that AMS's statements were false or that she "reasonably relied upon the false statement or
omission."  <u>See</u> <u>Heyer v. Schwartz & Assocs. PLLC</u>, 319 F. Supp. 3d at 306.  Accordingly, Ms.
Evans's negligent misrepresentation claim must be dismissed.  <u>See</u> <u>Rodriguez v. Lab'y Corp. of
AmericaHoldings</u>, 13 F. Supp. 3d 121, 130 (D.D.C. 2014) (dismissing negligent
misrepresentation and fraudulent misrepresentation claims for "largely the same reasons");
<u>Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of United States</u>, 258 F. Supp. at 20.

### B. Counts IV, V, and VI – Defendant Aedis

#### 1. Count IV:  Breach of Fiduciary Duty

       "To state a claim for breach of fiduciary duty under District of Columbia law, a
plaintiff must allege facts sufficient to establish:  (1) the defendant owed plaintiff a fiduciary
duty; (2) a breach of that duty; and (3) proximate cause and injury to be inferred from those
facts."  <u>Xereas v. Heiss</u>, 987 F.3d 1124, 1130 (D.C. Cir. 2021) (citing <u>Vicki Bagley Realty, Inc. v.
Laufer</u>, 482 A.2d 359, 363 (D.C. 1984) and <u>Randolph v. ING Life Ins. & Annuity Co.</u>, 973 A.2d
702, 709 (D.C. 2009)).  To find a fiduciary duty, "one characteristic that District of Columbia
courts have traditionally looked for is a special confidential relationship that transcends an
ordinary business transaction and requires each party to act with the interests of the other in

mind." Democracy Partners, LLC v. Project Veritas Action Fund, Civil Action No. 17-1047

(PLF), 2022 WL 3334689, at *5 (D.D.C. Aug. 12, 2022) (quoting Democracy Partners v. Project

Veritas Action Fund, 453 F. Supp. 3d 261, 279 (D.D.C. 2020)).

        In the instant case, it is undisputed that Aedis, as the settlement and escrow agent

for the sale of the Townhouse, owed Ms. Evans a fiduciary duty since "[e]scrow agents owe a

fiduciary duty of care to both buyer and seller in a real estate transaction." See Capital River

Enters., LLC v. Abod, 301 A.3d 1234, 1242 (D.C. 2023); see also Kim v. DP Cap. LLC, Civil

Action No. 23-1101, 2024 WL 4253168, at *4 (D.D.C. Sept. 20, 2024) (The "escrow/depositor

relationship . . . creates an independent fiduciary relationship between the parties," "regardless of

[the] contractual underpinnings.") (citation omitted). In Capital River Enterprises, LLC v. Abod,

the D.C. Court of Appeals discussed the fiduciary duty of care that an escrow agent owes,

explaining in relevant part that:

> Escrow agents owe a fiduciary duty of care to both buyer and seller
> in a real estate transaction. Wagman v. Lee, 457 A.2d 401, 405 (D.C.
> 1983). This includes "a duty of good faith and candor in affairs
> connected with the undertaking, including the duty to disclose to the
> principal 'all matters coming to [the agent's] notice or knowledge
> concerning the subject [ ] of the agency, which it is material for the
> principal to know for his protection or guidance.'" Aronoff v.
> Lenkin Co., 618 A.2d 669, 687 (D.C. 1992). Thus, in Aronoff, we
> said that an escrow agent breached his duty of care by failing to
> disclose to the buyer that the title was not in insurable condition
> (something he knew because he was also the purchaser's title
> insurer). Id. We cited the Restatement (Second) of Agency § 381,
> which states that "an agent is subject to a duty to use reasonable
> efforts to give his principal information which is relevant to affairs
> entrusted to him and which, as the agent has notice, the principal
> would desire to have." See id.

See Capital River Enterprises, LLC v. Abod, 301 A.3d at 1242.

        Ms. Evans does not clearly identify the particular fiduciary duties that she claims

Aedis breached. Based on the complaint and her opposition to the motion to dismiss, it appears

that Ms. Evans is arguing that Aedis breached its fiduciary duty in three ways.  First, Ms. Evans's principal argument appears to be that Aedis breached its fiduciary duty of care by failing to disclose relevant information to her – namely, the fact that the contested legal fees were to be paid in connection with the transaction.  See Second Am. Compl. ¶ 79.  This argument fails, however, because the allegations in the complaint clearly demonstrate that she was fully informed and aware that these fees were to be included in the total payoff amount.  Ms. Evans alleges that she was provided multiple payoff statements showing that the legal fees were to be included in the final payoff amount and that she extensively contested this inclusion.  See id. ¶¶ 14-21, 31-33, 37-39; see also Sept. 20, 2021 Payoff Statement; Nov. 4, 2021 Payoff Statement.  Indeed, Ms. Evans effectively concedes that she was fully aware that these fees were included, arguing that Aedis "forced [her] to accept the withholding of these disputed fees or face the postponement of her closing . . . ."  See Aedis Opp. at 4; see also AMS Opp. at 9 (arguing that "Plaintiff and her attorney [k]new" that they could address the issue of the inclusion of the legal fees "at a later date").  As to Aedis specifically, Ms. Evans alleges that her attorney reached out to Aedis to contest the inclusion of the legal fees, and that Aedis informed her approximately two weeks before the closing date that the fees would remain in the payoff amount unless she was able to "obtain a payoff statement without the legal fees included."  See Second Am. Compl. ¶ 19.  Several days after this communication, Aedis sent Ms. Evans a payoff statement showing that the legal fees would be part of the total payoff amount.  See id. ¶ 20.  At no point does Ms. Evans allege or argue that Aedis communicated that the legal fees would be removed from the payoff amount.

        Ms. Evans's primary response to her own factual allegations is that notwithstanding all the information she received, Aedis's Combined Settlement Statement did

not explicitly break out the total amount of the sales proceeds that would be used to pay the contested legal fees. See Second Am. Compl. ¶¶ 33, 39; Aedis Opp. at 2. Ms. Evans is correct that the Combined Settlement Statement does not provide a breakout showing the portion of the total amount that would be used to pay the contested legal fees. See Combined Settlement Statement. Instead, the Combined Settlement Statement provides a "Principal" amount of $328,393.04, see id., which is the sum of the loan balance, late fees, legal fees, and other fees provided in the November 4, 2021 payoff statement. See Nov. 4, 2021 Payoff Statement. The Court cannot conclude, however, that Aedis's failure to provide a more detailed breakdown of the "Principal" amount was a breach of its fiduciary duty to disclose relevant information to Ms. Evans. This is especially so in light of the fact that Ms. Evans's own allegations show that Aedis on multiple occasions informed her that the legal fees would be part of the total payoff amount. The Court's conclusion might have been different if there were any factual allegations in the complaint suggesting that the grouping of the loan balance, legal fees, and other fees into the "Principal" category was misleading, that Aedis grouped the items in an attempt to deceive Ms. Evans, or that Aedis had informed Ms. Evans that the legal fees had been removed from the payout statement before closing. But no such allegations exist in the complaint. Accordingly, in light of the allegations reflecting that Ms. Evans was fully aware that the legal fees were to be included in the total payoff amount, Ms. Evans has failed show that Aedis breached its fiduciary duty by failing to disclose relevant information. See Capital River Enterprises, LLC v. Abod, 301 A.3d at 1242.

Second, Ms. Evans argues that Aedis breached its fiduciary duty by failing "to obtain the accurate payoff amount for Evans and to disburse funds from her sale proceeds accordingly." See Aedis Opp. at 3. The problem for Ms. Evans is that she does not sufficiently

allege that Aedis failed to perform this purported duty.  It is certainly clear from the complaint

that Aedis obtained a payoff statement from Ms. Hood, see Second Am. Compl. ¶ 21, so the issue

becomes whether that statement was "accurate."  Aside from Ms. Evans's bald assertion that

"[u]nder the law, the payoff amount excludes liens, legal fees unrelated to the closing, and any

amounts purportedly owed to the lender outside its capacity as a lender," see Aedis Opp. at 3,

Ms. Evans does not provide any facts in the complaint creating the reasonable inference that the

amount of legal fees was not accurately included in the payoff statement.[11]  In other words, the

Court is left with the conclusory allegations that the payoff amount was inaccurate.  The Court

cannot find this unsupported assertion sufficient to withstand a motion to dismiss.  See Nurriddin

v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016) ("We need not, however accept inferences drawn

by a plaintiff if such inferences are unsupported by the facts set out in the complaint.  Nor must

we accept legal conclusions couched as factual allegations.") (internal citations and alteration

omitted).

Finally, Ms. Evans appears to argue that Aedis breached its fiduciary duty by

disbursing proceeds from the sale to pay off the contested legal fees.  See Second Am. Compl.

¶ 77.  The problem for Ms. Evans is that the complaint clearly shows that she "executed an

authorization to disburse sale proceeds."  See Second Am. Compl. ¶ 42; see also Combined

---

[11]    Ms. Evans alleges that an opinion from the D.C. Court of Appeals "confirms that
the Deed of Trust is not applicable to the legal claims assert by Defendant AMS."  See Second
Am. Compl. ¶ 53.  Although she attaches the D.C. Court of Appeals' opinion, her only argument
supporting her contention is that the D.C. Court of Appeals found that her action in the Superior
Court of the District of Columbia was not "an in-rem action in equity to enforce the Deed of
Trust, by requiring a sale of the Property to generate proceeds to repay the lender . . . ."  See id.
¶ 11; see also Exhibit 3 to the Second Am. Compl. [Dkt. No. 21-1] (D.C. Court of Appeals'
decision).  Ms. Evans's reference to the D.C. Court of Appeals' decision and the decision itself
do not provide a sufficient basis to reasonably conclude that the legal fees were impermissibly
added to the payoff amount.

Settlement Statement at 3; Authority to Disburse Sale.  More specifically, Ms. Evans attaches to the complaint the Combined Settlement Statement reflecting that $329,375.57 of the proceeds would be used as "Payoff to JoAnn Hood, Trustee."  See Combined Settlement Statement.  As the Court explained above, while the Combined Settlement Statement did not explicitly breakout the portion of this amount that was to be used to pay the contested legal fees, Ms. Evans – after vigorously contesting the inclusion of these fees – was told that by Aedis that these fees would be included in the final payoff amount.  See Second Am. Compl. ¶¶ 19-20.  Furthermore, Ms. Evans attaches the signed Combined Settlement Statement and Authority to Disburse Sale, which shows that she authorized Aedis to disburse the sale proceeds.  See Combined Settlement Statement; Authority to Disburse Sale.[12]  While Ms. Evans now disputes that $56,815.00 of this $329,375.57 should have been disbursed, she has not alleged that Aedis disbursed any funds beyond what she authorized it to disburse.  Ms. Evans therefore has failed to sufficiently allege that Aedis breached a fiduciary duty.  See Aedis Mem. at 9 ("[N]oticeably absent from Ms. Evans' Second Amended Complaint is any allegation that Aedis did not disburse the funds in the Transaction as required by the Settlement Statement.").[13]  Ms. Evans's claim for breach of a fiduciary duty is dismissed.

_____

[12]    Ms. Evans argues that the Authority to Disburse Sale did not authorize Aedis to disburse the contested legal fees because it provides for payment "only of legal fees for her own attorney fees 'in connection with said sale.'"  See Second Am. Compl. ¶ 42 (quoting Authority to Disburse Sale).  As Aedis correctly points out, the authorization is not so limited.  See Aedis Reply at 3.  Instead, it authorizes Aedis to "disburse all proceeds the undersigned are due and owe, including, but not limited to, the paying of the brokerage commissions in connection with said sale, any amounts due in connection with any mortgages or liens on said property and Seller's attorneys' fees in connection with said sale . . . ."  See Authority to Disburse Proceeds.

[13]    In her opposition, Ms. Evans accuses Aedis of "false[ly] represent[ing]" itself as a law firm because the Authority to Disburse Sale refers to "the law firm of Aedis Title, LLC, of Fairfax, VA."  See Aedis Opp. at 4; see also Authority to Disburse Sale.  Ms. Evans argues that this misrepresentation "voids any purported authorization" given to Aedis to disburse the funds.

2.  Count V and VI:  Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

"To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach."  Francis v. Rehman, 110 A.3d 615, 620 (D.C. 2015) (citation and emphasis omitted); see Newman v. Howard Univ. Sch. of L., 715 F. Supp. 3d 86, 102 (D.D.C. 2024).  To show the existence of a valid contract, "the plaintiff must point to a meeting of the minds between the parties on all material terms, along with an intent by the parties to be bound."  Newman v. Howard Univ. Sch. of L., 715 F. Supp. 3d at 102 (quoting Kramer Assocs., Inc. v. Ikam, Ltd., 888 A.2d 247, 251 (D.C. 2005)).  Typically, this requires the plaintiff to allege "an offer and an acceptance, and consideration" or "a bargained-for exchange." Id.; see Bullard v. Curry-Cloonan, 367 A.2d 127, 131 (D.C. 1976); Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P., 940 A.2d 996, 1003 (D.C. 2008).

Furthermore, "in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing."  Weatherly v. Second Nw. Coop. Homes Ass'n, Inc., 304 A.3d 590, 596 (D.C. 2023) (citation omitted).  Accordingly, to state a claim for breach of the

---

See Aedis Opp. at 4.  The Court does not see how this representation by Aedis, even if not true, is relevant, and it certainly does not "void" Ms. Evans's executed "authorization to disburse sale proceeds . . .," which she acknowledges.  See Second Am. Compl. ¶ 42.  Moreover, even if the Court were to conclude that the Authority to Disburse Sale was void, Ms. Evans separately authorized "Aedis Title, LLC to cause the funds to be disbursed in accordance" with the Combined Settlement Statement.  See Combined Settlement Statement at 3.  There therefore can be no dispute that Ms. Evans authorized Aedis to disburse the sale proceeds.

The Court also notes that there is nothing in the complaint suggesting that Aedis's purported "false representation" that it was a law firm serves as a basis for any of Ms. Evans's claims.  Indeed, the complaint does not mention this false representation at all.

implied covenant of good faith and fair dealing, "a plaintiff must first and foremost allege that there was a valid contract between the parties." Edwards v. Ocwen Loan Servicing, LLC, 24 F. Supp. 3d 21, 27-28 (D.D.C. 2014) (citation and internal quotation marks omitted); Clevinger v. Advoc. Holdings, Inc., Civil Action No. 23-1159 (JMC), 2024 WL 3359508, at *22 (D.D.C. July 10, 2024) ("The existence of a valid contract is an essential element of any claim for the breach of the implied duty of good faith and fair dealing.").

In the instant case, Aedis's primary argument in support of dismissing Ms. Evans's remaining claims is that Ms. Evans fails to allege the existence of a valid contract. See Aedis Mem. at 14. Aedis is correct that Ms. Evans does not specifically allege the existence of a contract between herself and Aedis anywhere in the complaint. In her opposition, Ms. Evans does not respond to Aedis's argument and otherwise fails to explicitly point to the contract that serves as the basis of her claims. Under these circumstances, the Court is permitted to treat Aedis's argument as conceded. See Potter v. Toei Animation Inc., 839 F. Supp. 2d 49, 53 (D.D.C. 2012) ("In the District of Columbia Circuit, it is established that an argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded."), aff'd, No. 12-5084, 2012 WL 3055990 (D.C. Cir. July 18, 2012). Accordingly, because Ms. Evans has failed to sufficiently allege the existence of a valid contract, her claims for breach of contract and breach of the implied covenant of good faith and fair dealing must be dismissed. See Curne v. U.S. Small Bus. Admin., Civil Action No. 23-3789 (BAH), 2024 WL 5056355, at *13 (D.D.C. Dec. 10, 2024) (dismissing breach of contract claim where plaintiff did not allege the existence of "a valid contract between the parties") (emphasis in the original) (citation and internal quotation marks omitted); Clevinger v. Advoc. Holdings, Inc., 2024 WL 3359508, at *22 (dismissing breach of good faith and fair dealing claims because plaintiff

"fail[ed] to allege a valid contract); <u>see also</u> <u>In re U.S. Off. Prods. Co. Sec. Litig.</u>, 251 F. Supp. 2d at 94-97 (dismissing breach of contract claim where plaintiff failed to allege sufficient facts demonstrating the existence of a contract).

Notwithstanding this fatal flaw, the Court assumes for the sake of argument that Ms. Evans's claims are premised on breaches of the Combined Settlement Statement and Authority to Disburse Sale.  <u>See</u> Combined Settlement Statement; Authority to Disburse Sale. Perhaps as a result of her failure to discuss the particular contract at issues, the nature of the breach serving as the basis for her claims is difficult to discern.  With that said, her arguments suggest that she is essentially recasting Aedis's purported breaches of fiduciary duty as breaches of contract and breaches of the implied covenant of good faith and fair dealing.  In other words, Aedis breached the Combined Settlement Statement and Authority to Disburse Sale by (1) failing to disclose that the legal fees would be paid in connection with the sale; (2) failing to obtain an accurate payoff amount; and/or (3) disbursing funds in a way that violated the Combined Settlement Statement and the Authority to Disburse Sale.

As the Court has already explained above, Ms. Evans's factual allegations do not support any of these purported breaches – whether viewed as breaches of a fiduciary duty, contract, or implied covenant of good faith and fair dealings.  Accordingly, even assuming the existence of a valid contract, Ms. Evans's final two counts must be dismissed.

For the foregoing reasons, the defendants' motions to dismiss are hereby granted. <u>See</u> Defendant, Adams, Morris & Sessing's, Motion to Dismiss Counts I, II, and III of Plaintiff's Second Amended Complaint [Dkt. No. 22]; Defendant Aedis Title LLC's Motion to Dismiss the Second Amended Complaint [Dkt. No. 23].

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 7/1/25